UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD ALEXANDER SPICE,

      Petitioner,

v.

JOHN DAVIDS,

      Respondent.

_____/

Case No. 1:21-cv-180

Hon. Hala Y. Jarbou

## OPINION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).

      The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). After undertaking the review required by Rule 4, the Court concludes that the petition is barred by the one-year statute of limitations. Nonetheless, the Court will permit Petitioner, by way of an order to show cause, an opportunity to demonstrate why his petition should not be dismissed as untimely.

The Court also concludes that the sole issue raised in the petition is procedurally defaulted and non-cognizable on habeas review.

## Discussion

### I.     Factual Allegations

Petitioner Donald Alexander Spice is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  On June 17, 2016, following a jury trial in the Kent County Circuit Court, Petitioner was convicted of first-degree premeditated murder, in violation of Mich. Comp. Laws § 750.316(1)(a), and carrying away of a dead body, in violation of Mich. Comp. Laws § 750.160.  On July 13, 2016, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of life without the chance of parole for murder and parolable life for the carrying away of a dead body.

Rule 4 of the Rules Governing § 2254 Cases calls upon the Court to conduct a preliminary review of the petition and any attached exhibits.  The Advisory Committee Notes to Rule 4 provide: "Such consideration may properly encompass any exhibits attached to the petition, including but not limited to, transcripts, sentencing records, and copies of state court opinions."  If such items are not included with the petition, "the judge may order any of these items for [her] consideration."  Advisory Committee Notes to Rule 4 (1976 Adoption).  Moreover, a court is permitted to "take judicial notice of facts contained in state court documents pertaining to [a petitioner]'s prior conviction so long as those facts can be accurately and readily determined." *United States v. Davy*, 713 F. App'x 439, 444 (6th Cir. 2017) (citing *United States v. Ferguson*, 681 F.3d 826, 834–35 (6th Cir. 2012)).

2

Petitioner provides scattered details regarding the events that prompted his prosecution and the procedural history in the state courts. To fill the gaps, the Court has relied on other sources of information. The Court has reviewed the Kent County Circuit Court file for Petitioner's prosecution, Case No. 16-00363-FC, as well as the materials from Petitioner's appeals that were made publicly available by the Michigan appellate courts.

As set forth below, Petitioner's trial was not transcribed in its entirety. Nonetheless, excerpts of the testimony were transcribed, including Petitioner's testimony. Additionally, the transcript of the preliminary examination is in the trial court file. Based on those materials, it appears to be undisputed that on the night of November 8, 2015, or early morning of November 9, while in the bedroom of the home he shared with his girlfriend in Grand Rapids, Michigan, Petitioner struck his girlfriend Lori Vargas on the head with a hammer, killing her. He cleaned up the scene, loaded her body into her car, drove it from Kent County to Ottawa County, and then abandoned the car with Ms. Vargas's body inside on the side of the highway and set it on fire.

As Petitioner was walking back to Grand Rapids from the scene of the fire, he was picked up by one of the officers returning from his investigation of the fire. Petitioner offered his identification to the officer. The officer recognized the address on the identification as being the same as the address of the registered owner of the burnt vehicle. Petitioner was taken into custody. Petitioner was interviewed by several officers and confessed that he struck Lori Vargas on the head with a hammer during an argument, removed her body from the home, transported it in the vehicle, and then set the vehicle on fire. The only issue for trial was Petitioner's intent and, thus, whether the killing was murder—and if so, what degree—or manslaughter.

3

The prosecutor elicited testimony from Petitioner regarding the couple's recent money troubles and a recent life insurance policy Petitioner had taken out on Ms. Vargas six weeks before he killed her.  Petitioner offered testimony regarding a heated argument between the two, some suggestion that Ms. Vargas had threatened her minor child, that Ms. Vargas wielded a knife during the argument, and that she grabbed, held, and threatened a dog beloved by Petitioner. According to Petitioner, the single blow with the hammer occurred while Ms. Vargas was holding and threatening the dog.  The jury found Petitioner guilty as outlined above.

Petitioner did not timely file an appeal as of right, nor did he timely file an application for leave to appeal to the Michigan Court of Appeals.  Petitioner represents that the trial court informed him of his right to appeal; but did not provide an appeal form to Petitioner.

Petition was transferred to the Michigan Department of Corrections on July 19, 2016.  (Pet'r's Br., ECF No. 2, PageID.28.)  He was hospitalized three days later and then transferred to the MDOC mental health facility three days after that.  (*Id.*)  After a week there, Petitioner was transferred to a different MDOC facility to participate in a treatment program.

While there, on August 12, Petitioner claims he was denied a "Right to Appeal" form because he did not have the funds necessary to pay for the copy.  Petitioner provides a "Legal Photocopy Disbursement Authorization" form wherein he requested a copy of the claim of appeal form.  (ECF No. 2-1, PageID.68.)  The form indicates that the cost of the copy was ten cents.  The form also indicates that Petitioner had inadequate funds to pay the charge, but did not qualify for a legal photocopy loan.

The Kent County Circuit Court file includes an account statement from the MDOC covering the one-year period ending on November 29, 2016.  Petitioner submitted the statement

to the Kent County Circuit Court in connection with his request for transcripts at the end of January 2017.

That statement provides a clear picture of Petitioner's financial situation while he was moved around during his first few weeks following his sentencing.  The account statement tracks Petitioner's report of initial transfers from facility to facility.  He went from the county jail to a MDOC facility in Jackson, then to the facility where he was hospitalized, and then to the Gus Harrison Correctional Facility.

Petitioner had funds that transferred with him, although there was some delay between the transfer of Petitioner and the transfer of his funds.  The statement shows that Petitioner's funds transferred into his account at Gus Harrison on August 16, 2016.  That supports Petitioner's claim that he may have been denied a photocopy loan on August 12.  At that time, Petitioner was not indigent—he had money—but that money was not accessible to him such that he could not pay the ten cents for the copy on that date.  But the statement also shows that Petitioner's funds transferred into his account on August 16, 2016, and that he was apparently aware of it because two days later there is a commissary transaction.  Money continued to flow in and out of the account thereafter.  Petitioner had funds in hand for several days before the time to appeal his judgment of conviction and sentence as of right expired.

Petitioner never filed an appeal of his judgment of conviction and sentence.  He did not file a claim of appeal form within the deadline for filing an appeal as of right, Mich. Ct. R. 7.204(A)(2) (42 days), nor did he file an application for leave to appeal within the deadline for filing an appeal by leave, Mich. Ct. R. 7.205(G) (6 months).  Instead, almost immediately after the

5

six-month deadline for applications for leave to appeal passed, Petitioner filed a motion in the trial court seeking transcripts.

Petitioner has not challenged his judgment of conviction and sentence by appeal or by motion; instead he has requested the preparation of his trial transcripts at public expense and then battled the denial of that request all the way to the Supreme Court.  Petitioner's initial request for the transcripts was received by the trial court on February 6, 2017.[1]  (ECF No. 2-2, PageID.70–71.)  The trial court responded by letter dated April 4, 2017.  (ECF No. 2-9, PageID.98.)  That letter informed Petitioner that to obtain the transcripts, under Mich. Ct. R. 6.433(C)(3), he was required to establish an inability to pay and "good cause" to order the transcription.  The letter indicated that Petitioner had demonstrated an inability to pay, but that his statement of cause was insufficient.

Petitioner then waited several months.  At the end of August 2017, he submitted a new motion for transcription to the trial court, along with a request for the docket entries.[2]  The documents were received by the court on September 15, 2017.  A handwritten note indicates that the docket entries were mailed to Petitioner on January 3, 2018.  Along with his August 2017

---

[1] It is possible that Petitioner submitted one request prior to the February 6, 2017 motion.  The trial court file includes a letter to Petitioner from Judge Rossi's law clerk that purports to respond to a January 13, 2017, letter from Petitioner. It is likely that the clerk transposed the numbers on the request that the trial court received on February 6, 2017—the proof of service and the account statement included in that request were dated January 31.  If that is not the case, there may be another letter request that does not appear in the trial court file.  If Petitioner submitted a request dated January 13, 2017, that request would have coincidentally occurred on the date the six-month deadline for his application for leave to appeal expired.

[2] In the interim, Petitioner reports that he wrote a letter to Judge Rossi's clerk, the signatory on the April 4, 2017 letter, attempting to show good cause for his request.  (ECF No. 2-10, PageID.100–103.)  That letter is not in the trial court file.

requests, Petitioner submitted another account statement that reflects transactions in his account from December 2016 through mid-August 2017.

Petitioner's second request for the production of transcripts attempted to correct the deficiency in his first request.  (ECF No. 2-3, PageID.73–81.)  He provided more detail regarding "good cause" for requesting the transcripts.  Additionally, in his second request, Petitioner claims he mailed an application for leave to appeal form to the Kent County Circuit Court on November 16, 2016.  There is no record of such a form in the Kent County Circuit Court file.

Several months passed.  On March 1, 2018, Petitioner wrote the trial court and inquired as to the status of his motion.  (ECF No. 2-4, PageID.83–84.)  A few days later, on March 7, 2018, the court entered an order denying Petitioner's request because he had failed to demonstrate "good cause."  (ECF No. 2-11, PageID.105.)[3]

Nine months later, on December 10, 2018, Petitioner filed in the Michigan Court of Appeals a delayed application for leave to appeal the denial of his request for transcripts.  The appellate court promptly denied Petitioner's application because it was too late. (ECF No. 2-12, PageID.107.)  Petitioner timely filed an application for leave to appeal to the Michigan Supreme Court.  That court denied leave by order entered July 29, 2019.  (ECF No. 2-13, PageID.109.)  Petitioner then filed a petition for certiorari in the United States Supreme Court.  His petition was denied on April 6, 2020.  (ECF No. 2-14, PageID.111.)

On February 25, 2021, the Court received the habeas petition.  It was postmarked February 23, 2021.  Under Sixth Circuit precedent, the application is deemed filed when handed

---

[3] Petitioner correctly notes that the order is not dated; however, in the trial court file, the order is stamped received and filed on March 7, 2018.

7

to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner did not supply the date he handed the petition to prison authorities for mailing.  The petition form specifically invites the petitioner to provide that information; but Petitioner left it blank.  Petitioner also chose not to date his signature, even though the petition form calls for that information as well.  Petitioner signed his brief on October 26, 2020,[4] but it seems unlikely that he submitted it for mailing then and that the Michigan Department of Corrections waited four months to mail the application.  Whether the date of filing is deemed to be October 26, 2020—the date the brief was signed—or February 23, 2021—the date the application was postmarked—or some date in between is immaterial because Petitioner's application is late even if it was handed over to prison officials on October 26, 2020.

The single issue raised in the habeas petition reads as follows: "denied transcripts because of indigency."  (Pet., ECF No. 1, PageID.6.)  Petitioner also refers the Court to his brief, wherein he describes the issue as follows:

I.     Whether Spice was denied protections afforded by the United States Constitution as formulated by United States Supreme Court precedent, when [the] trial court denied Spice any of the requested transcripts, including the jury trial, for use in a post-conviction appeal, based solely on Spice's indigency, despite showing "good cause" by specifically articulating alleged errors, where error occurred, and supporting case law, after the state had denied Spice the ability to file an appeal of right, for lack of 10¢ in his prison account, to purchase an appeal of right form?

(Pet'r's Br., ECF No. 2, PageID.14.)

---

[4] *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).  The particular significance of October 26, 2020, is explained below.

## II.   Statute of Limitations

Petitioner's application appears to be barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Petitioner's judgment became final on January 13, 2017, six months after his judgment of conviction and sentence was entered. That is the date the time for seeking review of his judgment of conviction and sentence expired.

9

*See* Mich. Ct. R. 7.205(G).  Thus, one year later, on January 13, 2018, Petitioner's period of limitation expired.

Petitioner filed his application, at the earliest, on October 26, 2020, and most likely at some time during February 2021.  Obviously he filed more than one year after the period of limitations began to run.  Thus, absent tolling, his application is time-barred.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").  Although Petitioner has diligently sought production of his trial transcripts from January of 2017 through April of 2020, when the United States Supreme Court denied his petition for certiorari, that effort is not "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim."  Indeed, a motion seeking transcripts is a textbook example of a post-conviction motion that is not an application for collateral review and, thus, does ***not*** toll the period of limitation under the statute. *See, e.g., Johnson v. Randle*, 28 F. App'x 341, 343 (6th Cir. 2001); *Lancaster v. Alameida*, 51 F. App'x 765, 766 (9th Cir. 2002); *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003).  Only "a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process" would qualify as a collateral review of the judgment.  *Wall v. Kholi*, 562 U.S. 545, 553 (2011).

Petitioner's motions sought transcripts, not a collateral review of his judgment. Certainly, with the transcripts in hand, he could initiate a request for collateral review, but the requests for transcripts were not, in and of themselves, requests for such review.  That is so even though Petitioner, to establish "good cause," described potential challenges he might collaterally

10

raise.  Indeed, Petitioner made clear that he did not believe he could mount his collateral challenges unless and until the court provided the trial transcripts.

Moreover, even if the motion seeking free transcripts sufficed to statutorily toll the period of limitation, it would not suffice to toll the period long enough to render the petition timely. The statute tolls the period only so long as a "properly filed application . . . is pending." Petitioner's application for leave to appeal from the denial of his motion for transcripts was not "properly filed" as required by § 2244(d)(2) to toll.  "Properly filed" means that the document's "delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz,* 531 U.S. at 8. Petitioner's application for leave to appeal was dismissed "because appellant failed to file the application within the time period required by MCR 7.205(G)(3)."  (Mich. Ct. App. Ord., ECF No. 2-12, PageID.107.)  This type of deficiency in filing renders Petitioner's application for leave to appeal not "properly filed" for purposes of § 2244(d)(2).

Petitioner's motion for collateral review remained pending until the time for filing his application for leave to appeal to the Michigan Court of Appeals expired.  *Holbrook v. Curtin*, 833 F.3d 612 (6th Cir. 2016).  The last day Petitioner could timely file his application for leave to appeal, and, thus, the last day Petitioner's motion or collateral review was properly filed and pending, was September 7, 2018.  Petitioner did not file his petition until more than two years after that date.  Thus, even if the motion for transcripts tolled the period of limitation, his petition was still untimely.

Even if the motion for transcripts tolled the period of limitation and even if Petitioner's properly filed motion remained pending despite the late filing of his application for

11

leave to appeal to the Michigan Court of Appeals, his petition was still untimely.  The Michigan Supreme Court denied Petitioner's application for leave to appeal on July 29, 2019.  Thereafter, the motion was no longer pending and could no longer toll the period of limitation.  On that issue, the period of tolling while a motion for collateral review is pending differs from the determination of when the judgment becomes final and triggers the commencement of the period of limitation.  The judgment becomes final on the later of 90 days after the Michigan Supreme Court denies leave to appeal and the date the United States Supreme Court denies the petition for certiorari or decides the granted petition.  But Petitioner does not get the benefit of tolling during the 90 days during which he could file a petition for certiorari or the time such a petition is pending or the granted petition is decided.  The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until a decision is issued by the ***state*** supreme court.  *Lawrence v. Florida*, 549 U.S. 327 (2007).  The statute is not tolled during the time that a Petitioner petitions for writ of certiorari in the United Stated Supreme Court.  *Id.* at 332.

The period of statutory tolling, if such a period existed at all, would have ended on July 29, 2019.  One year thereafter, on July 29, 2020, the period of limitation expired.  Thus, even in the most favorable possible interpretation of statutory tolling, the petition is late.[5]

The one-year limitations period applicable to § 2254 is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

---

[5] It would seem that Petitioner had some inkling regarding the timeliness issue.  The date he purportedly signed his brief is October 26, 2020—one year and 89 days after the Michigan Supreme Court denied leave to appeal.  If the law regarding the pendency of a collateral motion matched the law regarding when a judgment became final regarding the 90-day petition for certiorari period, then the petition would have been timely.  Of course, if the law regarding the pendency of a collateral motion matched the law regarding when a judgment became final, the continuing pendency of the petition for certiorari until April of 2020 would make the petition timely even if Petitioner filed in February of 2021.

The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See, e.g., Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case. A prisoner's lack of access to transcripts is not an extraordinary circumstance warranting equitable tolling. *See Hall v. Warden*, 662 F.3d 745, 750-51 (6th Cir. 2011). Moreover, the fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen*, 366 F.3d at 403 ("'[I]gnorance of the law alone is not sufficient to warrant equitable tolling.'") (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)).

In *Ata*, 662 F.3d at 741–42, the Sixth Circuit held that mental incompetence may be an extraordinary circumstance within the meaning of *Holland*, 560 U.S. at 631. Merely stating that a petitioner is mentally ill or incompetent, however, is not enough. To prove mental incompetence that would toll the statute of limitations, "a petitioner must demonstrate that (1) he is mentally incompetent, and (2) his mental incompetence caused his failure to comply with the AEDPA's statute of limitations." *Ata,* at 742. "[A] blanket assertion of mental incompetence is

13

insufficient to toll the statute of limitations.  Rather, a causal link between the mental condition and untimely filing is required." *Id.*  In addition, the court applied the standard set forth in *Schriro v. Landrigan*, 550 U.S. 465, 474–75 (2007), to determine whether the petitioner has made a sufficient showing to warrant an evidentiary hearing.  An evidentiary hearing is only required when the petitioner's allegations are sufficient to support equitable tolling and the assertions are not refuted by the record or otherwise without merit.  *Ata*, at 742.

Moreover, even if a petitioner shows that he or she was rendered incompetent by mental illness at one time, it does not mean that incompetence warrants tolling indefinitely.  In *Watkins*, 854 F.3d at 846, the Sixth Circuit rejected a claim of equitable tolling because of mental illness.  Although the petitioner had alleged that he was mentally incompetent at the time of trial, he presented no evidence that his mental health status impaired him during the limitations period and caused the untimely filing.  *Id.* at 852 (citing *Kitchen v. Bauman*, 629 F. App'x 743 (6th Cir. 2015)).  The fact that a person is receiving psychotropic medication could weigh more in favor of his being able to function than not.  *Miller v. Runyon,* 77 F.3d 189, 191–92 (7th Cir. 1996).  Thus, the fact that Petitioner takes such medications may support the determination that he was not incompetent.

Additionally, the fact that Petitioner, either independently or with assistance, has been able to pursue his motion regarding the transcripts and this petition suggests that he is not so incapable that he is incompetent to protect his rights.  "The exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity." *Brown v. McKee*, 232 F. Supp. 2d 761, 768 (E.D. Mich. 2002); *see also Watkins* (holding that assertion of existing mental illness during the period of limitations does not

14

demonstrate that the illness caused the delay in filing, especially given that the petitioner filed two timely motions in state court).

Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner.]'"  *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399–400.

In the instant case, although Petitioner may baldly claim that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable juror would have convicted him.  *Schlup*, 513 U.S. at 327, 329.  Petitioner's admissions at trial would preclude a claim of actual innocence now.  Because Petitioner has wholly failed to allege or provide new evidence of his actual innocence, he would not be excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).  His petition therefore appears to be time-barred.

15

The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds. *See Day,* 547 U.S. at 210; *see also Nassiri v. Mackie,* 967 F.3d 544, 548 (6th Cir. 2020). The Court will allow Petitioner 28 days to show cause why the petition should not be dismissed as untimely.

## III.    Procedural default

Even if Petitioner's claim were timely, habeas review would be barred by Petitioner's procedural default. Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor,* 404 U.S. 270, 275–78 (1971); *Duncan v. Henry,* 513 U.S. 364, 365–66 (1995); *Anderson v. Harless,* 459 U.S. 4, 6 (1982).

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik,* 986 F. 2d 1506, 1516 (6th Cir. 1993); *see also Picard,* 404 U.S. at 277–78. With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley,* No. 95-6184, 1996 WL 266421, at *1 (6th Cir. May 17, 1996) (citing *Castille v. Peoples,* 489 U.S. 346, 351 (1998) ("[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are

special and important reasons therefor,' . . . does not, for the relevant purpose, constitute 'fair presentation.'")); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996). Petitioner's late presentation of his habeas issue to the Michigan Court of Appeals does not constitute fair presentation.

Failure to fairly present an issue to the state courts is only a problem if a state court remedy remains available for petitioner to pursue. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to Petitioner, his failure to exhaust does not bar relief; but the claim may be procedurally defaulted. *Gray v. Netherland,* 518 U.S. 152, 161–62 (1996). Although Petitioner has not availed himself of the remedy of a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq*., that relief is not available for the transcript issue because Petitioner has already raised it on appeal and it has been decided against him.  Mich. Ct. R. 6.508(D)(2) ("The court may not grant relief to the defendant if the motion . . .alleges grounds for relief which were decided against the defendant in a prior appeal . . . ."). Thus, the Court concludes Petitioner has procedurally defaulted his habeas claim.

If a petitioner procedurally defaulted his federal claim, the petitioner must demonstrate either (1) cause and prejudice—cause for his failure to comply with the state procedural rule (or fairly present the issue in the state courts) and actual prejudice flowing from the violation of federal law alleged in his claim—or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.[6]  *See House v. Bell*, 547 U.S. 518, 536

---

[6]The miscarriage-of-justice exception has already been considered and rejected in connection with the timeliness issue.

(2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Hicks*, 377 F.3d at 551–52.

To show cause sufficient to excuse a failure to raise claims, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the claims. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available.  *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (quoting *McCleskey*, 499 U.S. at 493–94) (quotations omitted)).

For Petitioner's procedural default, he offers as "cause" arguments claiming that the order he failed to timely appeal was invalid because it did not include a date that the order was signed and that the use of docket entries to determine the timeliness of an appeal—as opposed to the date on the order—is forbidden.  Petitioner raises state law issues that have been decided against him by the Michigan Court of Appeals.

The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Petitioner's state law arguments, therefore, cannot establish cause to excuse his procedural default.

## IV.    Cognizability

And even if the petition were timely and Petitioner could overcome the procedural default bar, the only claim he raises is not cognizable on habeas review.  Petitioner claims that he is entitled to relief under Mich. Ct. R. 6.433(C) or, if the rule does not require relief, that denial of relief violates his due process and equal protection rights.

Petitioner's claim that the state did not follow its own rule is not cognizable on habeas review.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. at 62, whether or not a state court correctly applied its own law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id*. at 67–68.  As noted above, the decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright*, 464 U.S. at 84; *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  The state court's decision that the rule did not entitle Petitioner to post-conviction transcripts at government expense, therefore, is axiomatically correct on habeas review.

Although Petitioner and this Court are bound by the state court's determination that the rule does not entitle Petitioner to free transcripts, that does not rule out the possibility that the state has applied the rule to Petitioner in an unconstitutional way, for example, as Petitioner argues,

that the state court has violated Petitioner's equal protection rights.  Whether or not that claim has merit, however, it could not form the basis for habeas relief.

In *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986), the Sixth Circuit considered when errors in post-conviction proceedings were properly cognizable on habeas review.  The court turned to *Preiser v. Rodriguez*, 411 U.S. 475 (1973), for guidance.  In *Preiser*, three prisoners brought suit under 42 U.S.C. § 1983, claiming that they were unconstitutionally deprived of good-time credits following a guilty finding in disciplinary proceedings.  The deprivation of the credits impacted the duration of each prisoner's sentence; restoration of credits, on the other hand, could result in immediate release.  *Id*. at 476.  The *Preiser* court held that habeas corpus was the exclusive mode of relief because an attack on the legality of custody that seeks release is the traditional function of a habeas writ.

The *Kirby* court considered how *Preiser*'s reasoning might apply to Sixth Amendment claims seeking the effective assistance of counsel and Fourteenth Amendment claims alleging denials of due process and equal protection would apply to post-conviction proceedings. Such claims, the court noted, were not directed at the proceeding where Petitioner was convicted and sentenced and thus, even if Kirby prevailed on his constitutional claims, the result would not be release or a reduction in time.  *Kirby*, 794 F.2d at 247.  The *Kirby* court concluded that *Preiser* precluded the grant of habeas relief for such claims.  The *Kirby* court found support in cases from other circuits that also held "the writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration."  *Id*.

The *Kirby* court recognized that "the result of the habeas petition need not necessarily be reversal of the conviction[; h]owever, the petition must directly dispute the fact or

duration of confinement." *Id.* at 248.  That the ultimate goal might be release from confinement

was not sufficient if "the result of the specific issues before [the court was] not in any way related

to the confinement." *Id.*

       The Sixth Circuit continues to validate the *Kirby* holding.  In *Cress v. Palmer*, 484

F.3d 844 (6th Cir. 2007), the court stated:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings
> are outside the scope of federal habeas corpus review.  *See Kirby v. Dutton*, 794
> F.2d 245, 246–47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002).
> We have clearly held that claims challenging state collateral post-conviction
> proceedings "cannot be brought under the federal habeas corpus provision, 28
> U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in
> custody upon the legality of that custody, and . . . the traditional function of the writ
> is to secure release from illegal custody.'"  *Kirby*, 794 F.2d at 246 (quoting *Preiser*[,
> 411 U.S. at 484]). . . . A due process claim related to collateral post-conviction
> proceedings, even if resolved in a petitioner's favor, would not "result
> [in] . . . release or a reduction in . . . time to be served or in any other way affect his
> detention because we would not be reviewing any matter directly pertaining to his
> detention." *Kirby*, 794 F.2d at 247.  "Though the *ultimate* goal in" a case alleging
> post-conviction error "is release from confinement, the result of habeas review of
> the specific issue[ ] . . . is not in any way related to the confinement." *Id.* at 248.
> Accordingly, we have held repeatedly that "the scope of the writ [does not] reach
> this second tier of complaints about deficiencies in state post-conviction
> proceedings," noting that "the writ is not the proper means" to challenge "collateral
> matters" as opposed to "the underlying state conviction giving rise to the prisoner's
> incarceration." *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.
> 2002) ("error committed during state post-conviction proceedings can not [sic]
> provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v.
> Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to
> mount challenges to a state's scheme of post-conviction relief").

*Cress*, 484 F.3d at 853 (emphasis in original).  More recently, when asked to revisit *Kirby*, the

court of appeals stated that the petitioner "ha[d] not pointed to any decision by an *en banc* court

or any Supreme Court decision to undermine the logic of *Kirby* . . . ."  *Leonard v. Warden, Ohio

State Penitentiary*, 846 F.3d 832, 855 (6th Cir. 2017).

       Petitioner's attack on the state court's rejection of his post-conviction request for

free transcripts is likewise not cognizable on habeas review.  That claim does not seek immediate

or quicker release from custody, it simply seeks transcripts, because the denial of such transcripts,

Petitioner contends, is unconstitutional.  That relief might be available in an action under 42 U.S.C.

§ 1983, but it is not available under 28 U.S.C. § 2254.  Accordingly, Petitioner's claim for the

unconstitutional denial of free transcripts would not warrant habeas relief.

<u>Conclusion</u>

Petitioner's claim is untimely.  It is also procedurally defaulted and non-cognizable

on habeas review.  Petitioner must be afforded an opportunity to respond before a dismissal on

grounds of timeliness.  Although the alternative grounds for dismissal of the petition might moot

the effect of Petitioner's response with regard to this petition, the significance of the timeliness

determination on future habeas attacks, should Petitioner ever exhaust his merits issues by way of

a motion for relief form judgment under Mich. Ct. R. 6.500 *et seq*., warrants allowing Petitioner

an opportunity to show cause for his tardiness.  Accordingly, the Court will provide Petitioner 28

days to show cause for his late filing.  Pending that showing, the Court will hold any ruling on the

appealability of the issues Petitioner has raised.

An order consistent with this opinion will be entered.


Dated:    March 2, 2021                                                /s/ Hala Y. Jarbou
                                                                                        HALA Y. JARBOU
                                                                                        UNITED STATES DISTRICT JUDGE